# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

CLYDE GERALD FULLER, JR.        )
and BRENDA S. FULLER,           )
                                )
    Plaintiffs/Appellant,   )   Tipton Circuit No. 4614
                                )
VS.                             )   Appeal No. 02A01-9809-CV-00252
                                )
SHELDON B. FEINGOLD,            )
ANNIE M. FEINGOLD,              )
and TERMINIX INTERNATIONAL      )
COMPANY LIMITED PARTNERSHIP     )
                                )
    Defendants/Appellees.   )

FILED

April 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF TIPTON COUNTY
AT COVINGTON, TENNESSEE
THE HONORABLE JOSEPH H. WALKER, JUDGE

**JEFFERY L. STIMPSON**
Munford, Tennessee
Attorney for Appellants

**WILLIAM C. COLE**
Millington, Tennessee
Attorney for Appellees Sheldon B. Feingold
and Annie M. Feingold

**JOHN J. HEFLIN, III**
**KENNETH P. JONES**
**BOURLAND, HEFLIN, ALVAREZ & MINOR, PLC**
Memphis, Tennessee
Attorneys for Appellee Terminix International
Company Limited Partnership

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

    Clyde Gerald Fuller, Jr. and Brenda S. Fuller ("Fullers" or "Appellants") appeal from

the order of the trial court granting summary judgment to Sheldon B. Feingold and Annie M. Feingold ("Feingolds" or "Appellees") and Terminix International Company Limited Partnership ("Terminix" or "Appellees") as to all claims filed by Fullers.

## I. Factual and Procedural History

This case arises out of the sale of real estate located at 258 Whippoorwill Circle by the Feingolds to the Fullers. A real estate sales contract dated October 25, 1995 was signed by the parties on October 27, 1995. On November 27, 1995 the real estate transaction was closed. At said closing, the parties signed a Wood Destroying Insect Infestation Report, dated November 22, 1995, issued by Terminix, which reported no visible evidence of wood destroying insect infestation and excluded the following areas of the structure as obstructed or inaccessible: porch #10 (no access or entry) and #13 (no access beneath).

In early Spring, the Fullers noticed signs of termite infestation. On April 2, 1996, Mr. Terry Pafford of Tipton County Termite Pest Services, Inc. inspected the home for termites. Mr. Pafford observed active termites in the Fuller's residence front wall, visible from under the house, and from the kitchen and dining room. Mr. Pafford observed termite infestation covering the kitchen area, and observed a termite tunnel under the house with active termites.

A complaint was filed in this cause on October 25, 1996 by the Fullers seeking damages against Terminix for negligent inspection and misrepresentation and against the Feingolds for fraud and misrepresentation, violation of Tennessee Consumer Protection Act and breach of contract.

The report created by Terminix stated that there was no visible evidence of wood destroying insect infestation. A section in the report provided for the notation of other obstructed or inaccessible areas such as the basement, crawl space, main level, attic,

2

garage, exterior, addition and others. None of these was listed as obstructed or inaccessible on the report. Terminix did not inspect inside the residence and did not note that such area was obstructed or inaccessible. Mr. Harber of Terminix testified that Mrs. Fuller was home at the time of inspection and did not deny him access to the main level of the residence nor did he ask to gain entrance into the home.

The Fullers asserted claims against the Feingolds based upon their alleged knowledge of the termite condition and a statement in the Tennessee Residential Disclosure Form made part of the real estate contract stating that the Feingold's had a current termite contract. It is undisputed that no termite contract existed on the residence at the time of closing. The Feingolds testified that the notation on the form was a mistake made by the agent of the Feingolds, or the agent of the Fullers, in filling out the disclosure form.

Mr. Harber, in his deposition testimony, explained that a termite contract is generally an insurance policy for the benefit of the homeowner. A termite contract does not mean no termites are present. Termite contracts are not automatically transferable or assignable and the burden is on the new homeowner to contact the termite company regarding transfer of the contract.

In his deposition testimony, Fullers' expert, Mr. Pafford, testified that termites can enter a home overnight and the swarm season is from the first to middle of March through the middle of May. Mr. Pafford opined that the termites had been in the residence for two to six months but he could not testify with any degree of certainty that the termites were actually there in November of 1995.

Upon the affidavits, depositions, and the entire record, the trial court granted summary judgment to Terminix and the Feingolds, finding in pertinent part:

> The uncontradicted proof is that the first observation of termites was some months after the closing. The expert witnesses all agreed that termites could have entered the premises at sometime after the closing. There is no proof that

3

the termites were present at the time of closing, or that Terminix was negligent in its inspection.

The sales contract established that a termite inspection should be done, and that it was done. There was no termite contract on the house. That is, there was no agreement between the parties that termites would not infest the house. Even though one of the closing statements was marked to be a termite contract, it would be incumbent upon the plaintiffs to have any termite contract that existed assigned to plaintiffs, and to pay for the renewal. The plaintiffs took no action to have any contract assigned to them, or to pay for renewal of a termite contract.

The court finds that there is no material issue of fact, and that judgment may be entered for defendants as a matter of law.

This appeal by the Fullers followed.

## II. Summary Judgment and Terminix

The Fullers' claim against Terminix is based upon negligent inspection and misrepresentation. Terminix inspected the residence at 258 Whippoorwill Circle in Millington on November 22, 1995 and issued a "Wood Destroying Insect Report" indicating Terminix found no visible evidence of a wood destroying insect infestation. On or about April 2, 1996, the Fullers noticed active termites in their home. The Fullers alleged that Terminix failed to exercise reasonable care or competence in obtaining and communicating information to Fullers concerning the existence or evidence of wood destroying insects in the house.

According to Rule 56.03, summary judgment is to be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56.05 provides that the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or [otherwise], must set forth specific facts showing that there is a genuine issue for trial." Moreover, the cases make clear that the party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law. Byrd v. Hall, 847 S.W.2d

4

208, 211 (Tenn. 1993).

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. Id. at 211. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment ... shall be entered against him." Rule 56.05. Id.

The uncontroverted proof established that Terminix issued its report indicating no visible evidence of termite infestation on November 22, 1995. Closing on the real estate transaction between the Feingolds and Fullers occurred in November, 1995. In or around April of 1995, termites swarmed. The proof is uncontradicted that the termites were first observed some months after closing. Both David Harber, the Terminix inspector who issued the termite report, and Fuller's expert, Terry Pafford, testified that the termite report was not a promise or guarantee that termites were not present or would not appear in the future. Both termite inspectors agreed that the termite report was a certification that no visible evidence of termite infestation was observed.

The affidavit of David Harber of Terminix recites that he carefully inspected the residence on November 22, 1995, checking the perimeter of the house as well as spending approximately 20 minutes under the house checking the perimeter foundation wall before certifying that there was no visible infestation.

The Fuller's alleged that they would prove through their expert, Terry Pafford, that the termites must have been visible on November 22, 1995. In his deposition testimony, Mr. Pafford testified that he inspected the Fuller's home on April 2, 1997 and found active termites and one tunnel. However, Mr. Pafford testified that termites can enter overnight. Mr. Pafford testified that he did not know if the termites were there in November. He stated that there was no way he could speculate on how long the evidence of termite infestation

5

had been there and that it could have been there for a period of months or a period of weeks. In Mr. Pafford's opinion, the termites had been there from anywhere between two and six months but he could not testify with any degree of certainty that the termites were actually there in November of 1995. When asked if it was more probable than not that the termites existed in the house on November 22, 1995, Mr. Pafford testified that it would be pure speculation.

The Fullers also alleged that Terminix was negligent in it's inspection of the premises. Mr. Harber testified that he did not inspect the inside of the premises. Fuller's expert, Mr. Pafford, testified that he observed signs of termite infestation inside the residence. The Fuller's contend that Terminix should have inspected the inside of the premises or notified them that the inside premises were not inspected.

The termite report contained a Section V entitled "Obstructions & Inaccessible Areas." Mr. Harber placed a check mark in the box for "porch" with the notations "no access or entry" and "no access beneath." Although Mr. Harber did not inspect the inside main level of the home, he did not check the corresponding box for "main level" as inaccessible. In his deposition, Mr. Harber testified that he only goes inside a home if it is a slab home, but if there is a crawl space, the underneath is a more accurate inspection. He testified that this is a rule of thumb.

Mr. Harber testified that the space for "main level" is on the form because it is a universal form and it is there for slab homes, where it is necessary to check the inside of the home. He stated that if is was a slab home, he would have inspected the inside of the home and he would have also used the key found in Section V to note "fixed ceilings," "fixed wall covering," etc.. Mr. Harber further testified that he did not check the box indicating main level inaccessible because it was, presumably, accessible. He simply did not need entry into this area for his inspection.

The Fullers did not set forth any proof that the inspection performed by Terminix

6

was negligent. Furthermore, there was no proof presented that the termites were present at the time of the inspection. Without proof that the inspection performed by Terminix fell below the normal standard of care or that termites were present when the Terminix inspection occurred on November 22, 1995, the Fullers cannot prove any breach of duty by Terminix, nor that any act or omission by Terminix was the cause in fact or proximate cause of the damages claimed by the Fullers. The trial court did not err in granting Terminix's motion for summary judgment.

### III. Feingolds and Summary Judgment

_____The Fullers' complaint alleges fraud, misrepresentation, violation of the Tennessee Consumer Protection Act, and breach of contract by the Feingolds. The Fullers contend that the Feingolds had actual knowledge of the existence of termites prior to closing but failed to disclose the same. The Fullers also allege the Feingolds misrepresented to Fullers that there was a termite contract on the house.

On October 27, 1995, the Feingolds executed a Tennessee Residential Property Condition Disclosure statement prepared by either Feingolds' agent or Fullers' agent. The disclosure statement contained a checked box indicating the property had a "current termite contract." The proof is uncontroverted that no termite contract existed on the residence at the time of closing. The Fullers contend that they relied upon that representation in the purchase of the property to their detriment and suffered damages as a result. The Fullers also contend that this amounted to a material breach of contract.

The Feingolds testified that the indication of the existence of a termite contract on the house was an error on the part of the person preparing the statement. The Feingolds testified that, during the process of filling out the "Multiple Listing Service" document, they had informed their agent that the house did not have a termite contract and the agent, in fact, indicated there was no termite contract on that document.

7

There was testimony by Mr. Harber that a termite contract is not an assurance that there are no termites in a home. A termite contract is essentially an insurance policy for the benefit of the homeowner generally providing that, if termites are present, the termite company would have an obligation to address the termite problem. Mr. Harber further explained that it is incumbent upon the new homeowner to take steps to transfer the policy as it does not automatically transfer to the next homeowner.

The Fullers did not take any action to have any termite contract assigned to them, or to pay for the renewal of a termite contract. There is also no proof that the Fullers attempted to obtain a termite contract and were turned down. The proof established that a termite contract is not a guarantee that no termites exist in the residence. Therefore, the notation on the disclosure statement indicating the existence of a current termite contract has no bearing on the issue of whether the Feingolds committed a fraud or misrepresentation as to the existence of termites. As the Fullers took no actions to transfer the termite contract, nor made any attempts to obtain a termite contract and were denied, we find that the "current termite contract" notation on the disclosure statement was neither a material misrepresentation nor a material breach of contract.

Regarding the Fullers' claims that the Feingolds had actual knowledge of the existence of termites prior to closing, there was absolutely no proof set forth to support such claims. In the both the depositions and the affidavits of the Feingolds, the Feingolds testified that at no time during their residence at the property, up to and including the date of the closing, were they aware of the existence of termites. As discussed more fully above, the Fullers' own expert testified that he could not testify with any degree of certainty that the termites were in the residence in November of 1995.

The Fullers failed to set forth specific facts showing the existence of a genuine issue for trial. The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the Feingolds were entitled to a judgment as a matter of law. We therefore hold that

8

the trial court did not err in granting the Feingolds' motion for summary judgment.

## IV. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellants, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

9